UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KIM VASQUEZ,

                                        Plaintiff,

        v.

POLICE OFFICER ROBERT REILLY;
POLICE OFFICER MICHAEL FELTHAM;
POLICE OFFICER JOHN FREDRICKS;
POLICE OFFICER LT. WEISENBERG;
POLICE OFFICER JOHN DOE #CLK374, in
their own individual capacities of police
officers employed by the Clarkstown Police
Department; SUPERVISOR SCOTT M.
RIOS,

                                        Defendants.

No. 15-CV-9528 (KMK)

OPINION & ORDER

Appearances:

Kim Vasquez
Marcy, NY
*Pro Se Plaintiff*

John J. Walsh, II, Esq.
Paul E. Svensson, Esq.
Hodges Walsh & Messemer, LLP
White Plains, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

        Plaintiff Kim Vasquez ("Plaintiff") brings this Action against Defendants Police Officer

Robert Reilly, Police Officer Michael Feltham, Police Officer John Fredericks, Police Officer Lt.

Weisenberg, Police Officer John Doe, and Supervisor Scott M. Rios ("Defendants"), pursuant to

42 U.S.C. § 1983 and the New York State constitution, alleging violations of his constitutional

rights in connection with a search of his home and a subsequent arrest and prosecution.  (*See*

Second Am. Compl. (Dkt. No. 33).)[1]  Before the Court is Defendants' Motion To Dismiss.  For the reasons to follow, the Motion is granted in part and denied in part.

## I.  Background

### A.  Factual Background

The following facts are taken from Plaintiff's Second Amended Complaint and are taken as true for purposes of resolving the Motion.

On June 7, 2014, at approximately 9:15 PM, Defendants Reilly, Feltham, Weisenberg, and Fredericks entered the home of Plaintiff without a warrant and without the consent of Plaintiff.  (*See id.* ¶ 10.)  Plaintiff alleges that the search was conducted without lawful authority. (*See id.* ¶ 11.)  During the search, Reilly seized a cologne box containing $5,700.  (*See id.* ¶ 12.) Reilly also brought a dog ("King") onto the premises to assist with the search.  (*See id.* ¶ 13.) Plaintiff was not present at the time of the search, had no knowledge of the search, did not consent to it, and had no knowledge of any illegal items that were allegedly found at the scene. (*See id.* ¶ 14.)

Plaintiff acknowledges that his wife gave consent to search the premises without a warrant, but alleges that the consent did not give Defendants authority to search or seize Plaintiff's property.  (*See id.* ¶ 16.)  Plaintiff alleges also that Weisenberg, Fredericks, and King were not named on the consent-to-search form signed by his wife.  (*See id.* ¶ 17.)  Despite this, Fredericks entered the premises and took photographs of Plaintiff's home.  (*See id.* ¶ 18.)

Sometime thereafter, Fredericks filed an accusatory instrument, falsely accusing Plaintiff of possessing drugs and paraphernalia that were found at the scene, despite knowing that

---

[1] Plaintiff misspells "Fredricks," and the record indicates his name should be spelled "Fredericks."  (*See* Decl. in Supp. of Mot. To Dismiss Ex. F (Dkt. No. 39).)  The Court will use the spelling offered by the record.

Plaintiff could not have possessed the items, as he was not at the scene of the search.  (*See id.* ¶ 15.)  On June 13, 2014, a warrant was issued for Plaintiff's arrest.  (*See id.* ¶ 20.)  Plaintiff was unaware for approximately three months that there was a warrant for his arrest.  (*See id.*)  On or about September 24, 2014, Plaintiff was arrested by Defendant "John Doe" for the felonies and misdemeanors alleged by Fredericks in his accusatory instrument.  (*See id.* ¶ 21.)  All of the felonies were dismissed, Plaintiff was never indicted, and the charges were dismissed on or about April 9, 2015.  (*See id.* ¶ 22.)  Plaintiff had to serve two days in jail, go to numerous court appearances, and pay $15,000 in attorney fees.  (*See id.* ¶ 23.)

Plaintiff also names Supervisor Scott M. Rios as a Defendant.  (*See id.* ¶ 19.)  He alleges that Rios "reviewed these actions, and gave his consent to the actions performed by the officers, and is negligent for these actions having been occur[r]ed in escalation to criminal charges against . . . Plaintiff."  (*See id.*)

B.  Procedural History

Plaintiff filed his Complaint on December 4, 2015.  (*See* Dkt. No. 2.)  On January 20, 2016, then-Chief Judge Preska issued an Order to Amend, directing Plaintiff to file an Amended Complaint correcting various deficiencies in his Complaint.  (*See* Dkt. No. 5.)  On March 7, 2016, Plaintiff sent a letter indicating that he wanted his case transferred to a judge in White Plains.  (*See* Letter from Plaintiff to Court (Mar. 7, 2016) (Dkt. No. 7).)  On March 18, 2016, in accordance with Judge Preska's prior order, Plaintiff filed his Amended Complaint.  (*See* Dkt. No. 8.)  The case was reassigned to this Court on March 29, 2016, (*see* Dkt. (Notice of Case Reassignment Mar. 29, 2016)), and on April 7, 2016, the Court issued an Order of Service, which, among other things, dismissed the claims against Jena Vasquez (Plaintiff's wife) and

substituted the Town of Clarkstown as a Defendant in place of the Clarkstown Police Department, (*see* Dkt. No. 10).

On May 3, 2016, the Town of Clarkstown—then, the only remaining Defendant—filed a letter requesting leave to file a motion to dismiss. (*See* Letter from Paul E. Svensson, Esq., to Court (May 3, 2016) (Dkt. No. 15).) The Court granted leave and set a schedule, (*see* Memo Endorsement (Dkt. No. 17)), and on June 13, 2016, the Town of Clarkstown filed its Motion To Dismiss and supporting documents, (*see* Dkt. Nos. 18–22). Plaintiff responded on July 11, 2016, objecting that he had not consented to the substitution of the Town of Clarkstown, arguing that the case should be adjourned because he was unable to litigate the case due to issues he faces at the correctional facility where he is housed, and requesting that the Court appoint a pro bono attorney for him. (*See* Letter from Plaintiff to Court (July 11, 2016) (Dkt. No. 23).) The Town of Clarkstown filed a reply affirmation in support of its Motion. (*See* Dkt. No. 24.) On August 8, 2016, the Court informed Plaintiff that he needed to be more specific about the relief he sought, but that it was not inclined to grant Plaintiff's requests. (*See* Memo Endorsement (Dkt. No. 26).) Plaintiff filed another letter on September 24, 2016, requesting leave to file a second amended complaint and asking the Court to issue an order pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997). (*See* Letter from Plaintiff to Court (Sept. 24, 2016) (Dkt. No. 27).) The Court denied Plaintiff's request because the proposed second amended complaint concerned facts unrelated to the current case. (*See* Memo Endorsement (Dkt. No. 29).) On October 22, 2016, Plaintiff wrote again, explaining that he intended only to add the police officers who were involved in the search and arrest. (*See* Letter from Plaintiff to Court (Oct. 22, 2016) (Dkt. No. 31).) The Court granted Plaintiff two weeks to file the proposed amended complaint. (*See* Memo Endorsement (Dkt. No. 32).)

On November 15, 2016, Plaintiff filed a Second Amended Complaint.  (*See* Dkt. No. 33.)

Upon application from the Town of Clarkstown, the Court declared the Second Amended

Complaint a nullity because it went beyond the parameters set forth by the Court in its order

permitting Plaintiff to amend.  (*See* Memo Endorsement (Dkt. No. 35).)  The Court shortly

thereafter revised its determination, holding that the Second Amended Complaint should be

accepted for filing and informing Defendants, not including the Town of Clarkstown (which had

been removed from the case), that they could supplement the pending Motion To Dismiss.  (*See*

Order (Dkt. No. 36).)  Defendants thereafter supplemented their Motion.  (*See* Dkt. Nos. 38–42.)

Plaintiff filed a letter responding to the Motion, (*see* Dkt. No. 43), and Defendants filed a reply,

(*see* Dkt. Nos. 44–45).

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual

allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(alteration and internal quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil

Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked

assertions devoid of further factual enhancement."  *Id.* (alteration and internal quotation marks

omitted).  Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief

above the speculative level."  *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated

adequately, it may be supported by showing any set of facts consistent with the allegations in the

complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that

is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his] claims across the line from

conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679

("Determining whether a complaint states a plausible claim for relief will . . . be a context-

specific task that requires the reviewing court to draw on its judicial experience and common

sense.  But where the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader

is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P.

8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hyper-

technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a

plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the

factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and

"draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992

F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145

(2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must

confine its consideration to facts stated on the face of the complaint, in documents appended to

the complaint or incorporated in the complaint by reference, and to matters of which judicial

notice may be taken."  *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999)

(internal quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317

(S.D.N.Y. 2016) (same).

Where, as here, a plaintiff proceeds pro se, the court must "construe[] [his] [complaint]

liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]."  *Sykes v. Bank of*

6

*Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks omitted).  However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law."  *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and internal quotation marks omitted)).

### B.  Analysis

Defendants set forth a number of grounds for dismissing the Second Amended Complaint.  The Court will address each in turn, but must first determine which materials it may consider in adjudicating the Motion.

### 1.  Materials Considered

Defendants urge the Court to consider two sets of materials outside of the Second Amended Complaint in deciding the Motion: (1) the allegations made in Plaintiff's earlier Complaints, but omitted in the current version, and (2) documents produced by Defendants (including police reports and the consent-to-search form signed by his wife) during this litigation.  (*See* Mem. of Law Submitted by Defs. in Supp. of Their Rule 12(b)(6) Mot. To Dismiss Pl.'s Second Am. Compl. ("Defs.' Mem.") 6–7 (Dkt. No. 41).)

With respect to the allegations made in Plaintiff's earlier pleadings, Defendants are correct that "[w]here a 'plaintiff blatantly changes his statement of the facts in order to respond to the defendant's motion to dismiss and directly contradicts the facts set forth in his original complaint,' a court is authorized 'to accept the facts described in the original complaint as true.'" *Colliton v. Cravath, Swaine & Moore LLP*, No. 08-CV-400, 2008 WL 4386764, at *6 (S.D.N.Y.

Sept. 24, 2008) (alterations omitted) (quoting *Wallace v. N.Y.C. Dep't of Corr.*, No. 95-CV-4404, 1996 WL 586797, at *2 (E.D.N.Y. Oct. 9, 1996)), *aff'd*, 356 F. App'x 535 (2d Cir. 2009); *see also Dozier v. Deutsche Bank Trust Co. Ams.*, No. 09-CV-9865, 2011 WL 4058100, at *2 (S.D.N.Y. Sept. 1, 2011) ("[T]he court need not accept as true allegations that conflict with a plaintiff's prior allegations.").  "Where, however, an amended pleading is not in 'direct' contradiction with the original pleading, courts apply the general rule recognizing that an amended pleading completely replaces the original pleading."  *Brooks v. 1st Precinct Police Dep't*, No. 11-CV-6070, 2014 WL 1875037, at *3 (E.D.N.Y. May 9, 2014); *see also Bernadotte v. N.Y. Hosp. Med. Ctr. of Queens*, No. 13-CV-965, 2014 WL 808013, at *6 (E.D.N.Y. Feb. 28, 2014) ("Taken as a whole, while not congruous, [the] [p]laintiff's allegations are not in such direct contradiction that the [c]ourt is moved to abandon the usual deference afforded to an [a]mended [c]omplaint and therefore accepts all factual allegations in the complaint as true, and draws all reasonable inferences in the [p]laintiff's favor." (alterations and internal quotation marks omitted)).  Thus, "[w]hile courts are free to deny leave to amend a complaint if the proposed amended complaint attempts to omit certain previously-alleged facts without adequate explanation or in bad faith, once an amended pleading is filed, a court may not import information that was contained in the prior pleading but omitted from the amended pleading." *Kilkenny v. Law Office of Cushner & Garvey, L.L.P.*, No. 08-CV-588, 2012 WL 1638326, at *5 (S.D.N.Y. May 8, 2012) (citations omitted); *see also Tho Dinh Tran v. Alphonse Hotel Corp.*, 281 F.3d 23, 32 (2d Cir. 2002) ("A statement in a withdrawn complaint that is superseded by an amended complaint without the statement is no longer a conclusive judicial admission."), *overruled on other grounds by Slayton v. Am. Express Co.*, 460 F.3d 215 (2d Cir. 2006).

Here, Defendants have not directed the Court to any statements in the Second Amended Complaint that contradict earlier statements.  While Defendants point out that Plaintiff has omitted in the Second Amended Complaint any mention of how the police officers arrived at Plaintiff's residence, (*see* Defs.' Mem. 6–7), this omission does not contradict earlier facts.  And the mere fact that a plaintiff has chosen to omit, for strategic reasons, a fact alleged in an earlier pleading does not entitle the Court to consider that fact once it has accepted the amended pleading for filing.  *See, e.g.*, *Brooks*, 2014 WL 1875037, at *3 ("[The] [p]laintiff's [a]mended [c]omplaint omits a fact that was included in his original [c]omplaint, but does not 'directly contradict' any factual allegations made in the original [c]omplaint.  The [c]ourt therefore finds that the [a]mended [c]omplaint replaces the original complaint . . . .").  The Court therefore takes the allegations in the Second Amended Complaint as true, and does not consider the facts alleged in earlier iterations of the Complaint.

Next, Defendants argue for the consideration of certain documents produced by them to Plaintiff as part of their Rule 26 disclosures.  While Defendants cite the principle that "it is well established that a district court must confine its consideration to facts stated on the face of the complaint, and in documents appended to the complaint or incorporated in the complaint by reference," (Defs.' Mem. 6 (citing *Leonard F.*, 199 F.3d at 107)), this barebones statement of law does not address the issues present here.

On a Rule 12(b)(6) motion, extrinsic evidence may be considered only if it is "deemed part of the pleadings."  *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 59 (S.D.N.Y. 2010).  The complaint is deemed to include "any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (internal quotation marks omitted).  "Even where a document is not

9

incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Id.* at 153 (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)).  To be incorporated by reference, "the complaint must make 'a clear, definite and substantial reference to the documents.'" *DeLuca*, 695 F. Supp. 2d at 60 (quoting *Helprin v. Harcourt, Inc.*, 277 F. Supp. 2d 327, 330–31 (S.D.N.Y. 2003)).  "Limited quotation does not constitute incorporation by reference." *Goldman v. Belden*, 754 F.2d 1059, 1066 (2d Cir. 1985). "[W]here [a] plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint, the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated." *Chambers*, 282 F.3d at 153 (internal quotation marks omitted).  "[A] plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Id.*

Here, the Court agrees with Defendants that consideration of the consent-to-search form signed by Plaintiff is appropriate.  Plaintiff is in possession of the consent-to-search form, (*see* Decl. in Supp. of Mot. To Dismiss ("Decl.") ¶ 6 (Dkt. No. 39)), and Plaintiff references not just his wife's consent, but the actual information listed on the form, (*see* Second Am. Compl. ¶¶ 16– 17).  Likewise, the felony complaint prepared by Fredericks has been produced to Plaintiff, (*see* Decl. ¶ 7), and the content of the felony complaint is referenced in the Second Amended Complaint, (*see* Second Am. Compl. ¶ 15).  Accordingly, these documents may be properly considered in deciding the Motion.  *See King v. City of New York*, No. 12-CV-2344, 2013 WL 2285197, at *3 (E.D.N.Y. May 23, 2013) (considering, on a motion to dismiss, "the criminal complaint, a copy of the signed statement by the victim, the [p]laintiff's indictment, a state court

10

decision denying a motion to suppress the [p]laintiff's identity, and an arrest report," because the "[p]laintiff had actual notice of these documents and, presumably, relied upon them in drafting the [c]omplaint").

The other documents, however, may not be considered.  The police report and supplemental report are not mentioned by Plaintiff in the Second Amended Complaint, and while Plaintiff may have relied on those documents in drafting the Second Amended Complaint, the Court cannot discern that merely by examining the allegations.  Similarly, although the arrest warrant is referenced by Plaintiff, (*see id.* ¶ 20), "[s]uch limited references are insufficient to incorporate documents or exhibits into the complaint," *Sahu v. Union Carbide Corp.*, 548 F.3d 59, 67 (2d Cir. 2008); *see also Baines v. City of New York*, No. 10-CV-9545, 2015 WL 3555758, at *2 (S.D.N.Y. June 8, 2015) ("In this case, the police reports at issue were neither attached as exhibits to, nor referenced in, the [second amended complaint], and [the] [p]laintiff's passing mention of [a defendant's] assault allegations, which were detailed in one of the police reports, is insufficient to incorporate it into the [second amended complaint] such that it may be considered on a motion to dismiss." (citation omitted)).

Accordingly, the Court will consider the consent-to-search form filled out by Plaintiff's wife and the felony complaint prepared by Fredericks, but no other extraneous documents.  The Court will now turn to the merits of Plaintiff's claims.

### 2.  Fourth Amendment Claim

Plaintiff's first claim is best construed as raising a claim that his Fourth Amendment rights were violated when Defendants unlawfully entered and searched his home.  (*See* Second Am. Compl. ¶¶ 24–25.)

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV. "A warrantless search is per se unreasonable under the Fourth Amendment, unless the search can be justified by one of the narrowly drawn exceptions to the warrant requirement."  *United States v. Turner*, 23 F. Supp. 3d 290, 303 (S.D.N.Y. 2014) (italics omitted); *see also Steagald v. United States*, 451 U.S. 204, 211 (1981) ("Except in . . . special situations, we have consistently held that the entry into a home to conduct a search or make an arrest is unreasonable under the Fourth Amendment unless done pursuant to a warrant.").  One exception to the warrant requirement is where "proper consent" is "voluntarily given."  *United States v. Matlock*, 415 U.S. 164, 166 (1974).  "Consent may validly be granted by the individual whose property is to be searched, or by a third party who possesses common authority over the premises."  *United States v. Elliott*, 50 F.3d 180, 185 (2d Cir. 1995) (citation omitted) (citing *Matlock*, 415 U.S. at 171).

When examining whether a third party may consent to the search of a common premises, the inquiry is "whether the third party possessed 'a sufficient relationship to the searched premises to validate the search.'"  *Id.* (quoting *United States v. Trzaska*, 859 F.2d 1118, 1120 (2d Cir. 1988)).  Accordingly, "a third party may validity grant the requisite consent if [s]he has joint access or control of the property for most purposes," *id.* at 186; *see also United States v. McGee*, 564 F.3d 136, 139 ("Authority to consent to a search rests on 'mutual use of the property by persons generally having joint access or control for most purposes . . . .'" (quoting *Matlock*, 415 U.S. at 171 n.7)), or "if it was reasonable for the officers to believe [the third party] had the requisite relationship," *Elliott*, 50 F.3d at 186 (citing *Illinois v. Rodriguez*, 497 U.S. 177, 179 (1990)).  Moreover, "if the search exceeded the scope of the consent given, an officer's objectively reasonable belief that the search was within the scope of that consent is sufficient to

validate the search." *Id.* The Second Circuit has held that a third-party will have actual authority "if two prongs are present: first, the third party had access to the area searched, and, second, either: (a) common authority over the area; or (b) a substantial interest in the area; or (c) permission to gain access." *United States v. Davis*, 967 F.2d 84, 87 (2d Cir. 1992).

Determinations about whether a third-party had actual or apparent authority to consent to a search are typically made upon a more developed record than that present here. For instance, in *McGee*, the Second Circuit held that a woman whose boyfriend had locked her out of the home they cohabited had apparent authority to consent to a search of the home. *See* 564 F.3d 136. The court pointed to the fact that the record showed that the reason the woman was locked out of the home was not to keep her out, but rather to make her temporarily stay by denying her access to her personal belongings in the home. *See id.* at 141. Similarly, in *Trzaska*, the Second Circuit held that a criminal defendant's estranged wife had apparent authority to consent to the search of the home she formerly shared with the defendant because she had only recently moved out of the home, she still possessed a key to the home, and some of her personal belongings were still in the home. *See* 859 F.2d at 1120.

Finally, in *Turner*, the court held that a criminal defendant's ex-girlfriend had apparent authority to consent to a search of the defendant's apartment because the record revealed that the ex-girlfriend had told the officers that she had lived with the defendant for several months prior to the search and that she had possessed a set of keys to the apartment up until a few hours before the search. *See* 23 F. Supp. 3d at 305. The court held, however, that this consent did not entitle the police officers to enter the residence by force. *See id.* at 307.

Here, the facts alleged in the Second Amended Complaint do not allow the Court to conclude, with legal certainty, that Plaintiff's wife had actual or apparent authority to consent to

the search.  There are no facts indicating that Plaintiff's wife shared, or ever shared, the home

with Plaintiff, that she had a key or other access to the home, or that she had any personal

belongings in the home.  This may very well be a straight-forward case at summary judgment,

but where, as here, the only allegation is that a consent-to-search was executed by someone other

than the person challenging the search, the Court cannot say as a matter of law that Plaintiff's

Fourth Amendment rights were not violated.  *See Young v. Suffolk County*, 705 F. Supp. 2d 183,

203 (E.D.N.Y. 2010) ("[T]he existence of common authority over or a substantial interest in

property is not necessarily demonstrated by ownership of the property; rather, it is a factual

question that cannot be determined at this stage based on the pleadings in this case.  Accordingly,

the [c]ourt cannot make this determination on [the] defendants' motion to dismiss."); *Sullivan v.*

*Stein*, No. 03-CV-1203, 2005 WL 2209301, at *4 (D. Conn. Sept. 12, 2005) ("While the facts

may well show that [the] [d]efendants reasonably believed that [the owner] had authorized [the

owner's nephew] to grant them permission to enter and search the premises, the [c]ourt cannot

make this determination on the basis of the current record."); *see also United States v. Munoz*,

590 F.3d 916, 922 (8th Cir. 2010) ("Common authority is determined by mutual use, joint

access, and control, and is a question of fact." (internal quotation marks omitted)).  Plaintiff has

alleged that his wife's consent "did not grant authority for . . . Plaintiff[']s property," (Second

Am. Compl. ¶ 16), and that allegation is sufficient to withstand a motion to dismiss.[2]

---

[2] Defendants argue also that the search was justified as a "protective sweep," based on the fact that the officers were responding to a burglar alarm.  (*See* Defs.' Mem. 10–11.)  However, because the Second Amended Complaint contains no mention of a burglar alarm and the Court has already determined it will not consider the allegations raised in prior Complaints, this argument is not supported by the facts currently before the Court.

Moreover, while the Court will not consider police reports submitted by Defendants in support of their Motion, (*see* Decl. Exs. D, H), even were the Court to consider those documents, there may still be a question, given the circumstances of the consent allegedly provided by Plaintiff's wife, as to whether consent was voluntary.  *See, e.g.*, *United States v. Real Prop. & Premises Known as 90-23 201st St., Hollis, N.Y.*, 775 F. Supp. 2d 545, 556 (E.D.N.Y. 2011) ("Various factors can contribute to a finding that law enforcement created coercive surroundings. For example, 'it is significant if consent has been obtained while the consenting party was confronted by many police officers. . . .  Additionally, an attempt by law enforcement to enter a home at an unusually late or early hour may contribute to a finding of coercion.  Likewise, coercion may be present if law enforcement agents persist in attempting to gain entry in the face of a suspect's refusal to consent." (citations and alterations omitted) (quoting 4 Wayne R. LaFave, *Search and Seizure* § 8.2(b) (4th ed. 2004)); *United States v. Echvarria*, 692 F. Supp. 2d 322, 336–37 (S.D.N.Y. 2010) ("Some of the factors that bear upon the voluntariness of the consent include 'whether the defendant was in custody and in handcuffs, whether there was a show of force, whether the agents told the defendant that a search warrant would be obtained, whether the defendant had knowledge of the right to refuse consent, and whether the defendant previously had refused to consent . . . ." (quoting *United States v. Lavan*, 10 F. Supp. 2d 377, 384 (S.D.N.Y. 1998)).  In light of the fact that officers "pursued" Plaintiff's wife's vehicle, then "pulled the vehicle over" and "escorted" the wife back to the residence, (Decl. Ex. D), the Court cannot say, at this stage, that there could not be at least an allegation that the consent was not voluntary.

Accordingly, the Court denies the Motion with respect to Plaintiff's Fourth Amendment claim.  Moreover, because there are no facts on the record supporting Defendants' contention

that Plaintiff's wife "reside[d] in the marital residence," (Defs.' Mem. 13), the Court declines to

grant Defendants qualified immunity without the benefit of a more developed record.[3]

### 3.  False Arrest Claim

Plaintiff also brings a claim for false arrest.  (*See* Second Am. Compl. ¶¶ 24, 28.)

Defendants argue that the existence of probable cause for the arrest warrants dismissal of the

claim.  (*See* Defs.' Mem. 13–16.)

"A [§] 1983 claim for false arrest is substantially the same as a claim for false arrest

under New York law." *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007).  "The

common law tort of false arrest is a species of false imprisonment," and under New York law,

the elements of a false imprisonment claim are: "(1) the defendant intended to confine the

plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to

the confinement and (4) the confinement was not otherwise privileged." *Singer v. Fulton Cty.

Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (alteration and internal quotation marks omitted).

"There can be no federal civil rights claim for false arrest where the arresting officer had

probable cause." *Id.*

"An arrest made pursuant to a facially valid warrant is presumptively made with probable

cause." *Justice v. Kuhnapfel*, No. 13-CV-659, 2014 WL 2434139, at *3 (E.D.N.Y. May 29,

2014); *see also Walczyk v. Rio*, 496 F.3d 139, 155–56 (2d Cir. 2007) ("Ordinarily, an arrest or

search pursuant to a warrant issued by a neutral magistrate is presumed reasonable because such

warrants may issue only upon a showing of probable cause."); *Cogswell v. Cty. of Suffolk Deputy

Sheriff's Dep't*, 375 F. Supp. 2d 182, 187 (E.D.N.Y. 2005) ("In general, 'an arrest pursuant to a

---

[3] Because the Plaintiff has adequately alleged that Defendants engaged in a warrantless search without valid consent, the Court sees no need to engage his argument that the consent-to-search form did not grant consent for all Defendants to search.

valid warrant is presumptively made with probable cause.'" (quoting *Martinetti v. Town of New Hartford Police Dep't*, 112 F. Supp. 2d 251, 252–53 (N.D.N.Y. 2000)).  Accordingly, "[a] magistrate's finding of probable cause in issuing a warrant creates a presumption that probable cause existed, and is rebuttable only through proof of fraud, perjury or the misrepresentation or falsification of evidence." *Artis v. Liotard*, 934 F. Supp. 101, 103 (S.D.N.Y. 1996).

Here, the Court assumes that Plaintiff has adequately alleged the first three elements of a false arrest claim.  Where Plaintiff's claim falters, however, is on the fourth element.  Because Plaintiff's arrest was effected pursuant to an arrest warrant, Plaintiff may rebut the presumption of probable cause and state a claim only if he alleges facts suggesting that the arrest warrant was facially invalid or that it was procured through fraud, perjury, or the misrepresentation or falsification of evidence.  *See Soares v. Connecticut*, 8 F.3d 917, 920 (2d Cir. 1993) ("A plaintiff can demonstrate that [his right to be protected against false arrests] was violated where the officer submitting the probable cause affidavit 'knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit' or omitted material information, and that such false or omitted information was 'necessary to the finding of probable cause.'" (quoting *Golino v. City of New Haven*, 950 F.2d 864, 870–71 (2d Cir. 1991)); *Sheikh v. City of N.Y., Police Dep't*, Nos. 03-CV-6326, 05-CV-4718, 2008 WL 5146645, at *7 (E.D.N.Y. Dec. 5, 2008) ("In the face of a valid warrant where there is no showing of fraud, misrepresentation or falsification of evidence, there is no claim for false arrest, either under New York law or as a matter of Federal Civil Rights." (internal quotation marks omitted)).  Plaintiff has offered no facts suggesting that the arrest warrant was procured by fraud, misrepresentation, or falsification of evidence.  While Plaintiff has alleged that the underlying search giving rise to the arrest warrant was impermissible, he has not alleged that the circumstances of that search were

misrepresented to the judge or magistrate judge who issued the warrant, or that the arrest warrant was otherwise procured by fraud.  In the absence of such allegations, Plaintiff cannot rebut the presumption of probable cause created by the issuance of a valid arrest warrant, and Plaintiff has thus failed to state a claim for false arrest under either federal or New York law.

### 4.  Malicious Prosecution Claim

Plaintiff's next claim is for malicious prosecution.  (*See* Second Am. Compl. ¶¶ 24, 26.) Defendants again argue that the existence of probable cause warrants dismissal of the claim. (*See* Defs.' Mem. 16–17.)

"In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment, and must establish the elements of a malicious prosecution claim under state law."  *Manganiello v. City of New York*, 612 F.3d 149, 160–61 (2d Cir. 2010) (citations omitted).  To prevail on a malicious prosecution claim under New York law, the plaintiff must show: "(1) the defendant initiated a prosecution against [the] plaintiff, (2) without probable cause to believe the proceeding can succeed, (3) the proceeding was begun with malice, and (4) the matter terminated in [the] plaintiff's favor." *Rentas v. Ruffin*, 816 F.3d 214, 220 (2d Cir. 2016) (alterations and internal quotation marks omitted).  "[A] grand jury indictment gives rise to a presumption that probable cause exists and a claim for malicious prosecution in relation to the crimes described in the indictment thereby is defeated."  *McClellan v. Smith*, 439 F.3d 137, 145 (2d Cir. 2006).  To transform a state law claim for malicious prosecution into a § 1983 claim, the plaintiff must allege "some deprivation of liberty consistent with the concept of 'seizure.'"  *Singer*, 63 F.3d at 116.

Plaintiff has adequately alleged that Fredericks initiated a prosecution against Plaintiff, (*see* Second Am. Compl. ¶ 15), and that the matter terminated in Plaintiff's favor, (*see id.* ¶ 22).

Plaintiff's allegation that he was imprisoned for two days as a result of the prosecution unquestionably alleges a seizure potentially in violation of the Fourth Amendment. The remaining question, then, is whether Plaintiff has adequately alleged that Fredericks initiated the proceeding without probable cause and with malice.[4]

The Second Circuit has clarified that "probable cause" in the malicious prosecution context means "probable cause to believe that [the prosecution] could succeed." *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003). Thus, although the arrest warrant gave Officer John Doe probable cause to arrest Plaintiff, the Court must be careful not to "conflate probable cause to arrest with probable cause to believe that [a criminal defendant] could be successfully prosecuted. Only the latter kind of probable cause is at issue with respect to [a] malicious prosecution claim." *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 417 (2d Cir. 1999). On this reasoning, the Second Circuit has held that if the evidence giving rise to the prosecution "would clearly not be admissible," then "there [is] no probable cause to believe [a] prosecution could [have] succeed[ed]." *Boyd*, 336 F.3d at 77. Courts applying this standard have largely held that, accordingly, evidence obtained in violation of a plaintiff's Fourth Amendment rights cannot be relied on in arguing that there was probable cause to believe the plaintiff could be successfully prosecuted. *See, e.g.*, *Penree v. City of Utica*, No. 13-CV-1323, 2016 WL 915252, at *18 (N.D.N.Y. Mar. 4, 2016) ("[E]vidence obtained illegally that 'would clearly not be admissible' cannot then be the basis for probable cause to believe the prosecution could succeed" (quoting *Boyd*, 336 F.3d at 77)), *appeal filed*, No. 16-828 (Mar. 17, 2016); *Gannon v. City of New York*, 917 F. Supp. 2d 241, 244–45 (S.D.N.Y. 2013) (citing *Boyd* and denying the

---

[4] As above, Defendants' argument about the statements Plaintiff's wife made to the police is irrelevant, as the Court may not consider those statements at this stage.

defendants' motion to dismiss where the "[p]laintiff clearly allege[d] that [the defendant] filed charges against [the] [p]laintiff after the arrest pursuant to an unlawful search and that a criminal proceeding was terminated in [the] [p]laintiff's favor"); *Mazyck v. Johnson*, No. 08-CV-548, 2009 WL 2707360, at \*5 (E.D.N.Y. Aug. 25, 2009) (noting that "the question is not whether there exists probable cause to prosecute, but rather whether there is probable cause to *believe that a prosecution will succeed*," and holding that the defendants "had no probable cause to believe that the prosecution would succeed, given that the [evidence against the plaintiff] would be suppressed").

The Court recognizes that some courts have interpreted the Second Circuit's decision in *Townes v. City of New York*, 176 F.3d 138 (2d Cir. 1999), as holding otherwise. *See, e.g.*, *Mangum v. City of New York*, No. 15-CV-8810, 2016 WL 4619104, at \*7 (S.D.N.Y. Sept. 2, 2016) (holding that "[t]he Second Circuit, however, has squarely rejected the theory that evidence that is a 'fruit of the poisonous tree' so as to warrant suppression in a criminal trial must be excluded for purposes of assessing probable cause in a civil § 1983 action"); *Cyrus v. City of New York*, No. 06-CV-4685, 2010 WL 148078, at \*4 (E.D.N.Y. Jan. 14, 2010) ("The court's conclusion that the exclusionary rule does not apply to the probable cause determination in malicious prosecution claims is fully supported by the decisions cited for support." (internal quotation marks omitted)).  These cases misstate the holding of *Townes*.

In *Townes*, the Second Circuit held that in a § 1983 action, traditional causation analysis was not supplanted by the "fruit of the poisonous tree" doctrine, an evidentiary doctrine used in criminal law to suppress the fruits of an unlawful search.  *See* 176 F.3d at 146.  The court said nothing about whether illegally obtained evidence could be used to support a defense of probable cause in connection with a malicious prosecution claim—in fact, the claim at issue in *Townes*

was not even malicious prosecution, it was false arrest, and there was no dispute that the officers lacked probable cause for the underlying arrest and seizure. *Id.* at 145. The plaintiff, however, sought to expand his measure of damages by arguing that the subsequent prosecution and detainment, which allegedly arose from the fruits obtained from the false arrest, should be considered in determining the amount of damages. *Id.* at 145–46. The court rejected the notion that the fruit of the poisonous tree doctrine could be used to "elongate the chain of causation," holding that "constitutionally invalid police conduct that by itself causes little or no harm is assessed on ordinary principles of tort causation and entails little or nominal damages." *Id.* at 146. Nowhere did the court say, or even suggest, that illegally obtained evidence could be used to establish probable cause in defense of a malicious prosecution claim.

Accordingly, the principle established in *Boyd*, decided four years after *Townes*, controls the disposition of this Motion. Because, as set forth above, Plaintiff has adequately alleged that the search of his home was done without a warrant and without valid consent, the Court holds that there are sufficient allegations that, if true, would support the conclusion that when Fredericks filed the felony complaint, he lacked probable cause to believe the prosecution would be successful. Discovery may show that the search was not illegal, or it may show that the search, while illegal, was not so clearly illegal as to give rise to the conclusion that Fredericks knew or should have known that the evidence against Plaintiff would be suppressed. But these determinations are best left either for summary judgment or for trial. At this stage, the Court is satisfied that Plaintiff has adequately alleged that Fredericks lacked probable cause to believe the prosecution against Plaintiff would succeed.

With respect to malice, "lack of probable cause generally raises an inference of malice." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 131 (2d Cir. 1997); *see also Boyd*, 336 F.3d at 78

21

("A lack of probable cause generally creates an inference of malice.").  Because Plaintiff has

adequately alleged lack of probable cause, malice may be inferred at this stage.  Thus, Plaintiff

has pled all the elements of a claim for malicious prosecution under both § 1983 and New York

law.

For the reasons set forth above, the Court denies Defendants' Motion To Dismiss

Plaintiff's claim against Fredericks for malicious prosecution.

### 5.  First Amendment Claim

Plaintiff additionally sets forth a claim under the First Amendment related to the use of a

dog to search the premises in "violation of . . . Plaintiff[']s Muslim religion."  (Second Am.

Compl. ¶ 25.)  Defendants argue that they are entitled to qualified immunity on this claim.  (*See*

Defs.' Mem. 18–20.)

"The doctrine of qualified immunity protects government officials from liability for civil

damages insofar as their conduct does not violate clearly established statutory or constitutional

rights of which a reasonable person would have known."  *Pearson v. Callahan*, 555 U.S. 223,

231 (2009) (internal quotation marks omitted).  "[Qualified] immunity protect[s] government's

ability to perform its traditional functions . . . by helping to avoid unwarranted timidity in

performance of public duties, ensuring that talented candidates are not deterred from public

service, and preventing the harmful distractions from carrying out the work of government that

can often accompany damages suits."  *Filarsky v. Delia*, 566 U.S. 377, 389–90 (2012) (second

alteration in original) (internal quotation marks omitted).  Qualified immunity shields a

defendant from standing trial or facing other burdens of litigation "if either (a) the defendant's

action did not violate clearly established law, or (b) it was objectively reasonable for the

defendant to believe that his action did not violate such law."  *Johnson v. Newburgh Enlarged*

*Sch. Dist.*, 239 F.3d 246, 250 (2d Cir. 2001) (internal quotation marks omitted).  Application of qualified immunity is appropriate at the motion-to-dismiss stage where "the defense is based on facts appearing on the face of the complaint."  *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004).

The Supreme Court has held that when evaluating an asserted qualified immunity defense, a court may begin by examining whether a reasonable law enforcement officer in the defendant's position would have believed his or her conduct would violate the asserted constitutional right.  *See Pearson*, 555 U.S. at 236 (overruling *Saucier v. Katz*, 533 U.S. 194 (2001), and explaining that judges are no longer required to begin by deciding whether a constitutional right was violated but are instead "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first"). The Supreme Court has further instructed that "[t]o be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right.  In other words, existing precedent must have placed the statutory or constitutional question beyond debate."  *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012) (second alteration in original) (citations and internal quotation marks omitted).  Furthermore, "the right allegedly violated must be established, not as a broad general proposition, but in a particularized sense so that the contours of the right are clear to a reasonable official."  *Id.* at 2094 (citations and internal quotation marks omitted).  Otherwise stated, to determine whether a right is clearly established, courts must determine "whether (1) it was defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has confirmed the existence of the right, and (3) a reasonable defendant would have understood that his conduct was unlawful."  *Doninger v. Niehoff*, 642 F.3d 334, 345 (2d Cir. 2011).

Here, even assuming Plaintiff's First Amendment rights were violated and that those rights were defined with reasonable clarity, it is not the case that any reasonable officer would have understood that the use of a dog to search a suspect's home was unlawful.  To be sure, First Amendment claims for strip-searches or pat-downs in violation of a prisoner's religious freedom have been sustained by a number of courts in the Second Circuit.  *See, e.g.*, *Forde v. Zickefoose*, 612 F. Supp. 2d 171, 178 (D. Conn. 2009) (denying summary judgment where "regular cross-gender pat-down searches would place a substantial burden on [a prison inmate's] exercise of her religion"); *Jean-Laurent v. Wilkerson*, 438 F. Supp. 2d 318, 324 (S.D.N.Y. 2006) (denying a motion to dismiss where the plaintiff's "second strip search as alleged furthered no legitimate penological goal"), *aff'd*, 461 F. App'x 18 (2d Cir. 2012); *Show v. Patterson*, 955 F. Supp. 182, 190 (S.D.N.Y. 1997) (denying summary judgment where the "defendants ha[d] not established that the simultaneous strip search of [the] plaintiffs with other inmates was reasonable in light of [the] plaintiffs' allegations that (1) on other occasions Muslim inmates had been searched separately; and (2) approximately fifteen guards were present when the inmates were ordered to remove their clothes").  But the conduct alleged in those cases is far different from that alleged here.  For one, the plaintiffs in the cited cases were inmates at correctional facilities, subjected to policies that, allegedly, systematically deprived inmates' of their religious freedom.  Here, by contrast, Plaintiff merely takes umbrage with the use of a dog during a one-time search of his home.  Additionally, unlike the plaintiffs in other cases, Plaintiff has not alleged that the use of a dog during the search was unreasonable or unjustified, or that it burdened or otherwise impeded the exercise of his religion.  Plaintiff's only allegation is that the use of a dog was done in "violation of . . . [P]laintiff[']s Muslim religion."  (Second Am. Compl. ¶ 25.)  The Court has conducted a thorough review of existing case law and has found nothing suggesting that such

conduct is unlawful, and certainly nothing that would alert "every reasonable official" that the search was unlawful.  Accordingly, Defendants' Motion is granted with respect to Plaintiff's First Amendment claim, as Defendants are entitled to qualified immunity.

### 6.  Supervisory Liability

Finally, Plaintiff brings a claim against Supervisor Rios because he "signed off and reviewed and condoned the unlawful police procedures and violations of . . . [P]laintiff[']s rights secured under the Constitution."  (Second Am. Compl. ¶ 27.)

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation."  *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) (italics omitted).  As this Court has already recognized, *see Lebron v. Mrzyglod*, No. 14-CV-10290, 2017 WL 365493, at *3–5 (S.D.N.Y. Jan. 24, 2017); *Samuels v. Fischer*, 168 F. Supp. 3d 625, 634–36 (S.D.N.Y. 2016), there is a conflict in the Second Circuit as to whether the five categories of supervisory liability under § 1983 announced in *Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995), survive the Supreme Court's decision in *Iqbal*, compare, *e.g.*, *Hollins v. City of New York*, No. 10-CV-1650, 2014 WL 836950, at *13 (S.D.N.Y. Mar. 3, 2014) (holding that only the first and part of the third categories in *Colon* survive *Iqbal*), *and Bellamy v. Mount Vernon Hosp.*, No. 07-CV-1801, 2009 WL 1835939, at *6 (S.D.N.Y. June 26, 2009) (same), *aff'd*, 387 F. App'x 55 (2d Cir. 2010), *with Marom v. City of New York*, No. 15-CV-2107, 2016 WL 916424, at *15 (S.D.N.Y. Mar. 7, 2016) ("The holding in *Iqbal* does not stand for the proposition that a supervisor can never be found personally liable for a constitutional deprivation on a showing that he was 'grossly negligent' or 'deliberately indifferent.'"), *reconsideration granted in part*, 2016 WL 5900217 (S.D.N.Y. July 29, 2016), *and Sash v. United States*, 674 F.

Supp. 2d 531, 544 (S.D.N.Y. 2009) ("Where the constitutional claim does not require a showing

of discriminatory intent, but instead relies on the unreasonable conduct or deliberate indifference

standards of the Fourth and Eighth Amendments, the personal involvement analysis set forth in

*Colon v. Coughlin* may still apply."), *and Delgado v. Bezio*, No. 09-CV-6899, 2011 WL

1842294, at *9 (S.D.N.Y. May 9, 2011) (holding that if "the claim does not require a showing of

discriminatory intent, the *Colon* analysis should still apply, insofar as it is consistent with the

particular constitutional provision alleged to have been violated" (internal quotation marks

omitted)).  While the Court has already expressed its general agreement with those courts

holding that the five categories announced in *Colon* are still valid, *see Lebron*, 2017 WL 365493,

at *4–5, resolution of the split in authority is not necessary here.

"Conclusory accusations regarding a defendant's personal involvement in the alleged

violation, standing alone, are not sufficient, and supervisors cannot be held liable based solely on

the alleged misconduct of their subordinates."  *Lindsey v. Butler*, 43 F. Supp. 3d 317, 329

(S.D.N.Y. 2014) (internal quotation marks omitted), *reconsideration granted in part on other

grounds*, No. 11-CV-9102, 2014 WL 5757448 (S.D.N.Y. Nov. 5, 2014), *reconsideration denied*,

2015 WL 1501625 (S.D.N.Y. Apr. 1, 2015); *see also Vogelfang v. Capra*, 889 F. Supp. 2d 489,

502 (S.D.N.Y. 2012) ("[T]he mere fact that a defendant possesses supervisory authority is

insufficient to demonstrate liability for failure to supervise under § 1983." (internal quotation

marks omitted)).  Similarly, "merely recit[ing] the legal elements of a successful § 1983 claim

for supervisory liability" "does not meet the plausibility pleading standard."  *Dotson v. Farrugia*,

No. 11-CV-1126, 2012 WL 996997, at *6 (S.D.N.Y. Mar. 26, 2012), *reconsideration denied*,

2012 WL 1864278 (S.D.N.Y. May 22, 2012).

Here, Plaintiff has offered only conclusory allegations as to Rios's liability, alleging merely that because Rios possessed supervisory authority, he is responsible for "sign[ing] off and review[ing] and condon[ing] the unlawful police procedures." (Second Am. Compl. ¶ 27.) Such conclusory allegations, devoid of any detail as to how Rios actually participated in the alleged constitutional violations, are insufficient to state a claim for supervisory liability. *See Parris v. N.Y. State Dep't of Corr. Servs.*, 947 F. Supp. 2d 354, 364 (S.D.N.Y. 2013) ("Allegations as to [the] defendants' knowledge of alleged constitutional violations are insufficient to impose supervisory liability under § 1983 unless accompanied by allegations that the defendants had direct responsibility for monitoring the alleged violation or that there had been a history of previous episodes putting the defendants on notice of the problem." (alterations and internal quotation marks omitted)). Accordingly, Plaintiff's claims against Rios are dismissed.

### 7. Dismissal With Prejudice

A complaint should be dismissed without prejudice if the pleading, "'liberally read,' suggests that the plaintiff has a claim that she has inadequately or inartfully pleaded and that she should therefore be given a chance to reframe." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (alterations and citation omitted) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). If a complaint, however, has substantive problems and "[a] better pleading will not cure [them]," "[s]uch a futile request to replead should be denied." *Id.* (citing *Hunt v. All. N. Am. Gov't Income Tr.*, 159 F.3d 723, 728 (2d Cir. 1998)). Even pro se plaintiffs are not entitled to file an amended complaint if the complaint "contains substantive problems such that an amended pleading would be futile." *Lastra v. Barnes & Noble Bookstore*, No. 11-CV-2173, 2012 WL 12876, at *9 (S.D.N.Y. Jan. 3, 2012), *aff'd*, 523 F. App'x 32 (2d Cir. 2013).

Here, Plaintiff has already amended his Complaint twice, once in response to an Order to Amend.  (*See* Dkt. No. 5.)  Moreover, although the various iterations of Plaintiff's Complaint have all addressed the same core set of facts, his theory of liability has been ever-shifting.  (*See* Dkt. Nos. 2, 8, 33.)  Defendants are generally not required to defend against a "moving target." *See Ma'at el v. Doe*, No. 15-CV-6581, 2016 WL 6205795, at *1 n.2 (E.D.N.Y. Oct. 24, 2016) (noting that the court had denied leave for a fourth amended complaint because it "would have continued this 'moving target' litigation"), *appeal filed*, No. 16-3767 (Nov. 7, 2016); *Kraebel v. N.Y.C. Dep't of Hous. Preservation & Dev.*, No. 90-CV-4391, 2002 WL 31016654, at *2 (S.D.N.Y. Sept. 9, 2002) (noting that the court had denied leave to file supplemental papers because "it was unfair to require a party to shoot at a constantly moving target" (internal quotation marks omitted)).  As the Court is not persuaded that a third amendment could cure the deficiencies identified above, and as the Court is similarly not confident that offering Plaintiff another opportunity to amend will not result in yet another new theory of the case, the dismissal of the claims identified is with prejudice.

### III. Conclusion

For the foregoing reasons, the Motion is granted in part and denied in part. The Motion

is granted with respect to Plaintiff's false arrest and First Amendment claims against all

Defendants; that dismissal is with prejudice. The Motion is further granted with respect to all

claims against Rios; that dismissal is also with prejudice. The Motion is denied in all other

respects. This Order terminates all claims against Defendants John Doe and Scott M. Rios. The

Court will hold an initial conference to set a schedule for discovery on April 24, 2017 at 3:30

PM. The Clerk of Court is respectfully requested to terminate the pending Motions. (Dkt. Nos.

18, 38.)

SO ORDERED.

DATED:      March 9 , 2017
            White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

29